UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LEIGH KOGER, :
    Plaintiff, :
    v. : NO. 3:07-CV-01158 (WWE)
  :
SYNTHES NORTH AMERICA, INC., :
    Defendant, :

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, plaintiff Leigh Koger alleges that certain orthopedic screws manufactured and sold by defendant Synthes North America, Inc. ("Synthes"), that had been implanted in her pelvis, were defective and thereby caused her injury.[1] Defendant Synthes moves for summary judgment. For the following reasons, the motion for summary judgment will be granted.

### Factual Background

The parties have submitted statements of undisputed facts with supporting exhibits, which reveal the following factual background.

Plaintiff suffered multiple trauma, including posterior pelvic fracture at the sacrum, as a result of a motorcycle accident on September 24, 2003. Michael Miranda, M.D., surgically repaired the sacral fracture at Hartford Hospital on September 25, 2003. As part of the surgery, two Synthes fully-threaded cannulated screws were implanted at the site of the sacral fracture.

---

[1] Defendant asserts that its correct name is Synthes (U.S.A.).

1

An orthopedic implant screw will fail, even if not defective, when subjected to sufficient stresses due to failure of a fracture to heal, a condition known as delayed union or nonunion.

On August 17, 2005, x-rays revealed that one of the two screws had broken.

On October 17, 2005, plaintiff was examined by David Aspirinio, M.D., an orthopedic surgeon. He referred plaintiff to have CT Scans taken of her pelvic area. In his deposition, Dr. Aspirinio testified that the CT Scan findings were consistent with a partial non-union.

## Discussion

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere of

2

existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for her. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Plaintiff's products liability action is brought under the Connecticut Products Liability Act, Connecticut General Statutes § 52-572m, which provides for a statutory action in damages grounded in strict liability for a product defect. Johannsen v. Zimmer, Inc., 2005 WL 756509 (D. Conn. March 31, 2005).

A plaintiff must also prove that the product was in a defective condition rendering the product unreasonably dangerous and thereby proximately causing the injuries alleged. Morris v. Viking Pools Northeast, Inc., 492 F. Supp. 2d 90, 92 (D. Conn. 2007). Defendant asserts that plaintiff lacks the expert testimony to prove both defective condition and causation.

Connecticut courts have adopted the consumer expectation test for strict liability as articulated by the Restatement (Second) of Torts. Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 211 (1997). Thus, a manufacturer is strictly liable for injuries suffered if the product has a defective "condition not contemplated by the ultimate

consumer that will be unreasonably dangerous to the consumer." Restatement (Second) of Torts § 402A.  However, the Connecticut Supreme Court has provided that a "modified consumer expectation test" should be applied where the product involves complex designs, in which case an ordinary consumer may not be able to form expectations of safety.  Potter, 241 Conn. at 219.  Under the modified consumer expectation test, the fact-finder must consider the usefulness of the product, the likelihood and severity of the danger posted by the design, the feasibility of alternative designs, the cost of improvements, the ability to alter the design without harming the product's usefulness or price, and the possibility of spreading potential loss by increasing the product's price.  Id. at 221.

In this instance, the implanted medical screws are medical devices that are outside of the ordinary consumer's common knowledge; thus, the modified consumer expectation test applies.  See Johannsen, 2005 WL 756509, at *8 (hip prosthesis outside common knowledge).  Generally, expert evidence is necessary where the subject matter is not within common knowledge.  Fane v. Zimmer, Inc., 927 F.2d 124, 131 (2d Cir. 1991) (implantation device was not within common knowledge and required expert testimony).  Plaintiff has provided no evidence, expert or otherwise, relevant to an assessment of whether the screw presented an unreasonably dangerous condition.

Even if plaintiff could establish that the screw was defective, plaintiff's lack of expert testimony is fatal to her proof of causation.  Expert opinion is necessary to establish a causal link where such causation is outside the common knowledge of a layperson.  Graham v. Fireline, Inc., 2006 WL 1646165, at *7 (D. Conn. June 14, 2006) (citing cases).  Plaintiff does point out that Michael Craig, M.D., who reviewed x-rays of

the injured area, opined that a nonunion had not occurred and that corrosion could be the cause of the breakage.  However, at the summary judgment stage, plaintiff must produce evidence establishing that it is more probable than not that the screw broke due to its defective condition.  See id. at *7.  Dr. Craig stated that corrosion could present a "possible" cause of the breakage, and his testimony indicates that he did not review a more sensitive test of the area such as a CT Scan.  Such evidence does not establish that it is more probable than not that a defect caused the injury.  Further, defendant has provided expert testimony that the screw broke due to a nonunion after review of a CT Scan, a more sensitive test.

     Plaintiff argues that the doctrine of res ipsa loquitur should bar summary judgment.  However, plaintiff's proof of defect and causation involves complex issues, requiring expert testimony.   Plaintiff cannot rely upon application of the "malfunction doctrine," which is an approach similar to that of res ipsa loquitur that has been adopted in products liability cases.  Hartford Fire Ins. v. Dent-X Intern., Inc., 2007 WL 911841, at *4 (D. Conn. March 23, 2007).  Under the malfunction doctrine, a defect may be inferred by circumstantial evidence that (1) the product malfunctioned, (2) the malfunction occurred during proper use, and (3) the product had not been altered or misused in a manner that probably caused the malfunction.  Id.  In Dent-X, this Court held that a jury should be allowed to infer causation from the circumstances that an x-ray machine caught fire over a weekend while no one was in the office.  The Court reasoned that the case involved no technical facts requiring expert testimony, and there was no outside factor other than the defect that could be the cause of injury.  In this case, plaintiff's case requires complex medical and technical expert testimony to

determine whether the breakage occurred as a result of a defect or a nonunion. According to the record, it appears more probable than not that a nonunion occurred. Thus, absent expert testimony, plaintiff cannot adduce sufficient proof of her claim to survive summary judgment.

## **Conclusion**

For the foregoing reasons, the motion for summary judgment (Doc. #41) is GRANTED.  The clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this   15th    day of December, 2009.

                                                /s/
                                      Warren W. Eginton
                                      Senior United States District Judge